IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DIANE L. REESE and
DONALD REESE,

                Plaintiffs,

     v.

ROBERT FINLEY and
CITY OF OCEAN CITY,

                Defendants.

HON. JEROME B. SIMANDLE

Civil No. 03-4029 (JBS)


**OPINION**

APPEARANCES:

Michael A. Ruggieri, Esq.
Law Offices of Joseph A. Ruggieri
5303 Atlantic Avenue
Ventnor, NJ 08406
    Counsel for Plaintiffs

Robert P. Merenich, Esq.
GEMMEL, TODD & MERENICH, P.A.
767 Shore Road
P.O. Box 296
Linwood, NJ 08221
    Counsel for Defendant, City of Ocean City

**SIMANDLE**, District Judge:

    Presently pending before the Court is Defendant Ocean City's
Motion for Summary Judgment in this case involving a bicycle and
pedestrian accident on the boardwalk. (Pl.'s Compl. at ¶ 7.)
Because Plaintiff cannot prove that the Ocean City boardwalk was
a "dangerous condition" as defined in N.J. STAT. ANN § 59:4-1(a),
Defendant's motion is granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The accident giving rise to this lawsuit occurred on the Ocean City boardwalk at approximately 7:30 a.m. on Friday July 19, 2002.  On that morning, Plaintiff Diane L. Reese ("Plaintiff" or "Reese") was walking on the boardwalk near 18th Street in the City of Ocean City ("Ocean City").  That same morning Defendant Robert Finley ("Finley") rode his bike in the direction Plaintiff Reese was walking.

Defendant Finley observed Plaintiff Reese and her companion and moved to pass them on their left.  After moving to the left, Finley noticed other bicycle riders headed straight at him.  The accident occurred as Finley swerved into Diane Reese while attempting to avoid the group of bikers, whom Finley described as "hot doggers."  (Finley Dep. 377-14, and 49-50.)  The force of the impact knocked Plaintiff Reese to the ground and caused her to hit her head on the boardwalk.  Plaintiff was rendered unconscious, suffered brain injuries, and fractured her left wrist as a result of the accident.

Plaintiff Reese initiated suit on August 25, 2003, naming Finley and Ocean City as defendants.[1]  (Pl's Compl. at ¶ 17).  In Count II of the Complaint, Plaintiff alleged that Ocean City was negligent by failing to "design, construct, control and maintain

_____

[1] Plaintiff Reese and Defendant Finley reached a settlement agreement.  Consequently, Reese's claim against Ocean City is all that remains of the case.

2

its boardwalk in reasonably safe condition, because the boardwalk
was too narrow at the location of the accident." (*Id.*) In
particular, Plaintiff claimed that the boardwalk was too narrow
to permit simultaneous walking, jogging, and cycling uses. (*Id.*)
The parties have agreed that the boardwalk is fourteen feet wide
between 15th and 20th streets in Ocean City, which includes the
area of the accident.[2] At the time of the accident, however,
there were no baby strollers, roller bladers, baby carriages,
wheel chairs, surreys or non-powered scooters in the area.

Defendant Ocean City filed its Motion for Summary Judgment
attacking Plaintiff's case on three grounds. First, Ocean City
argues that Plaintiff cannot establish that the boardwalk was a
"dangerous condition." Second, Ocean City contends that it is
entitled to immunity for its decisions to allow bicycles on the
boardwalk. Third, Ocean City also seeks summary judgment on the
grounds that its actions and/or omissions were not "palpably
unreasonable." After summarizing the applicable standard of
review, the Court will discuss these arguments, as well as
Plaintiff's counter arguments, in greater detail.

_____

[2] Ocean City Ordinance 18:4.1 prohibited bicycles on the
boardwalk between the hours of 12:00 p.m. and 5:00 a.m. at the
time of the accident. ("it shall be unlawful...to operate....a
bicycle upon the boardwalk...other than between the hours of 5:00
a.m. and 12:00 p.m.")(Def.'s Mem. Supp. Summ. J. Ex. O). The
parties agree Finley was operating his bicycle in compliance with
this provision of the ordinance on the date of the accident.

## II.   THE LEGAL STANDARD

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 due to diversity of citizenship, and New Jersey law applies to this claim and the municipality's defenses.  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the evidence contained in the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Serbin v. Bora Corp.,* 96 F.3d 66, 69 n.2 (3d Cir. 1996) and Fed. R. Civ. P. 56.  Judicial consideration of summary judgment motions requires that all reasonable inferences from facts placed before the court must be drawn in favor of the non-moving party.  *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990).

Once the moving party has met its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Several Supreme Court cases have held that a summary judgment motion should be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict in favor of the nonmoving party.'" *See, e.g., Lawrence v. National Westminster Bank New Jersey,* 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In other words,

4

the non-moving party, here the Plaintiff, must "make a showing
sufficient to establish the existence of [every] element
essential to that party's case, and on which that party will bear
the burden of proof at trial." *Serbin*, 96 F.3d at 69 n. 2
(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. DISCUSSION

Plaintiff Reese's claims against Ocean City arise under the
New Jersey Tort Claims Act ("the Act"). *See* N.J. STAT. ANN. §§
59:4-1 to :4-9. The Act defines the limits of public entities'
liability for personal injuries arising from the condition of
public property. In order to hold a public entity liable for a
an "injury caused by a condition of the property," the statutory
language of N.J. STAT. ANN. § 59:4-2 ("§ 59:4-2") requires a
plaintiff to establish five elements.

### A. The Statutory Framework

First, a plaintiff must establish that "the property was in
dangerous condition at the time of the injury." N.J. STAT. ANN. §
59:4-2. Second, a plaintiff must show that "the injury was
proximately caused by the dangerous condition." *Id.* Third, a
claimant must demonstrate that "the dangerous condition created a
reasonably foreseeable risk of the kind of injury which was
incurred." *Id.* To establish the fourth element, a plaintiff
seeking to hold a public entity liable can prove one of two
things. Specifically, the plaintiff must show that either:

5

> a. a negligent or wrongful act or omission of
> an employee of the public entity within the
> scope of his employment created the dangerous
> condition; or,
>
> b. a public entity had actual or constructive
> notice of the dangerous condition under
> section 59:4-3 a sufficient time prior to the
> injury to have taken measures to protect
> against the dangerous condition.

N.J. STAT. ANN. § 59:4-2.   If the plaintiff can prove either (a)

or (b) then this fourth proof is satisfied.

Assuming that the plaintiff proves each of the first four

requirements, § 59:4-2 adds one final provision.   Referred to as

the "palpably unreasonable" provision, the last paragraph of §

59:4-2 specifies that:

> Nothing in this section shall be construed to
> impose liability upon a public entity for a
> dangerous condition of its public property if
> the action the entity took to protect against
> the condition or the failure to take such
> action was not palpably unreasonable.

N.J. STAT. ANN. § 59:4-2.

These five elements can be synthesized and simplified as

follows.   Plaintiff must demonstrate that: (1) the property was

in a dangerous condition; (2) the dangerous condition was the

proximate cause of Plaintiff's injury; (3) the dangerous

condition created a foreseeable risk of the injury Plaintiff

sustained; (4) the public entity either knew of the dangerous

condition or created it through an action or omission;  and (5)

the action or inaction the public entity took or failed to take

was "palpably unreasonable." Because Plaintiff cannot prove that
the boardwalk was a dangerous condition, as that term is defined
under the New Jersey Tort Claims Act, Defendant's Motion for
Summary Judgment is granted.

**B. Dangerous Condition**

Defendant first argues that Plaintiff cannot establish that
the Ocean City boardwalk in the area of Plaintiff's accident is a
"dangerous condition of public property." In § 59:4-1(a) a
dangerous condition is defined as a "**condition** of property that
creates a substantial risk of injury when such property is used
with due care in a manner in which it is reasonably foreseeable
that it will be used." (emphasis added). Arguing principally
that Plaintiff's claims cannot be sustained because her injuries
were caused by the "reasonably foreseeable negligent acts of a
third party" Defendant asks this Court for summary judgment.

In response, Plaintiff contends that "[w]hether a condition
of public property is 'dangerous' within the meaning of the New
Jersey Tort Claims Act is a factual issue, unless reasonable men
could not differ as to whether the condition was dangerous."
(Pl's. Br. in Opp. to Def. Ocean City's Mot. for Summ. J. at 14,
*citing Cordy v. Sherwin Williams*, 975 F. Supp. 639, 643 (D.N.J.,
1997)). Citing the report and opinion of her expert, Dr.
Lucenko, Plaintiff argues that the boardwalk was simply "too
narrow for all of the activities permitted on the boardwalk,

7

including bicycling, jogging, walking, using baby strollers and carriages and wheelchairs." (*Id.* at 15).

In certain cases, the question of "dangerous condition" must be resolved by the court as a matter of law, in order to ensure that the "legislatively-decreed restrictive approach to liability" under New Jersey law is enforced. *Polyard v. Terry*, 160 N.J. Super. 497, 508, 390 A.2d 653 (App. Div. 1978), aff'd o.b., 79 N.J. 547, 401 A.2d 532 (1979). In addressing this summary judgment motion, the Court asks if reasonable minds could differ about whether the condition was indeed "dangerous" as defined by the Act. *Polyard* at 510.

Even accepting the opinion of Plaintiff's expert for the purposes of deciding this motion, the Court holds that the "narrow" nature of the boardwalk cannot be, as a matter of law, a dangerous condition.  Common sense, the plain meaning of the statutory definition of "dangerous condition", and New Jersey cases interpreting that provision all confirm that a boardwalk being too narrow for its allowed uses cannot be a dangerous condition.

Beginning with the statutory language itself § 59:4-1(a) defines a "dangerous condition" as a "condition of property". The meaning of "condition" can be found in *Black's Law Dictionary,* which defines it as "a state of being; an essential quality or status."   BLACK'S LAW DICTIONARY 314 (8th ed. 2004).

8

Relatedly, *Black's* defines a "dangerous condition" as a "property defect creating a substantial risk of injury when the property is used in a reasonably foreseeable manner." *Id.*

These definitions illuminate two ideas. First, the "condition" of the property relates to the state the property is in. Second, for the property to be in a dangerous condition it must be defective. For example, a sidewalk which is cracked or uneven would be in a cracked or uneven state, and, consequently, defective and dangerous.[3] Similarly, a boardwalk could be in a dangerous condition if nails protruded several inches from the wood such that a pedestrian might trip and fall over the nails. *See e.g. Mendelsohn v. City of Ocean City*, 2004 U.S. Dist. LEXIS 20467 (D.N.J. 2004) (discussed infra)

This contrasts with Plaintiff's use and understanding of dangerous condition in this case. Here Plaintiff claims the boardwalk was in a dangerous condition because it was too narrow

---

[3] For example, in *Hayden v. Curley*, 34 N.J. 420 (1961), the New Jersey Supreme Court reversed the trial court's grant of a dismissal after the close of evidence. In reversing the lower courts' decisions, the New Jersey Supreme Court held that a reasonable juror could have found that a dangerous condition existed. *Id.* at 423, 427. In particular, the *Hayden* court held that three contiguous slabs of concrete which had been raised and broken by tree roots, including one slab which had been raised four inches above an adjoining slab, could constitute a dangerous condition. *Id. See also Atalese v. Long Beach Twp.*, 365 N.J. Super. 1, 3 (App. Div. 2003) (holding that plaintiff's fall on "a little uneven" portion of pavement, consisting of approximately three-quarters of an inch depression in a bike lane, could be a dangerous condition making summary judgment inappropriate).

for all the permitted uses to occur simultaneously. Unlike a cracked sidewalk, a potholed road, or a boardwalk with protruding nails the Ocean City boardwalk was not in a defective state. On the contrary, the Ocean City boardwalk was the width it was designed to be, fourteen feet, easily wide enough for multiple users to pass one another unless a user is negligent.

Indeed, it is uncontroverted that there was sufficient width for Finley to pass Mrs. Reese and her walking companion without crossing the center dividing line. (Finley Dep. at 49-50.) Also, at the time and place of the accident, the boardwalk was not unduly congested. Mr. Finley saw, at most, seven persons in a forty-foot span, including Mrs. Reese, her companion and the five individuals proceeding south. (Finley Dep. at 37:7-14.)

Besides the plain meaning of the statutory language and the facts of the case, the structure of the New Jersey Tort Claims Act supports this Court's understanding of the word "condition". In order to establish the liability of a public entity arising from the existence of a dangerous condition, the statute requires the Plaintiff to show either that the public entity had notice of the dangerous condition or that an employee of the public entity created the dangerous condition. N.J. Stat. Ann. § 49-4-2(a) and (b).

Applying this statutory requirement to cases involving differentials in pavement, as the *Atalese* court did, makes sense.

10

(discussed supra at n.3)  In *Atalese*, the pavement settled after
the Public Works department laid down a sewer extension.  365
N.J. Super. at 3-4.  Under the *Atalese* facts, therefore, the
court could easily find that employees of the municipality's
public works department "created the dangerous condition by
negligently installing the storm sewer extension in question".
*Id.*  The pavement literally changed states.  Before the employees
laid the sewer extension there was no pavement differential,
after the extension there was a differential.

Comparing *Atalese* to this case underscores how the boardwalk
was not in a dangerous condition.  In *Atalese*, the defining
physical characteristic of the property was the sunken pavement;
in this case the salient physical feature of the boardwalk was
its 14.5 foot width.  The differences in these characteristics
exemplify how the width of the boardwalk is not a condition at
all.

Instead of pavement becoming uneven, which implies a danger
by itself, the width of the boardwalk can only be characterized
as defective if other facts are considered.  In contrast to
*Atalese*, therefore, it would not be enough to say that the
boardwalk was 14.5 feet wide and ask whether a public employee
negligently created the boardwalk that wide; nor would it suffice
to ask if Ocean City had notice that the boardwalk was 14.5 feet
wide.  These inquiries do not lead to any insights about Ocean

11

City's liability.

Instead, the § 49-4-2 inquiry only makes sense if the physical width of the boardwalk is judged "too narrow." Only then could the Court apply § 49-4-2 by asking whether Ocean City knew that the boardwalk was too narrow, or, by asking whether employees of Ocean City negligently acted or failed to act in keeping the boardwalk too narrow. For this reason the structure of the Act underscores how the narrowness of the boardwalk was not a dangerous condition.

Case law supports and clarifies this analysis. In particular, New Jersey case law highlights two ways in which the Ocean City boardwalk cannot meet the statutory requirements of a "dangerous condition". First, being too narrow is not a physical defect; and relatedly, the danger in this case arose from the activities conducted on the boardwalk and not the condition of the property itself.

In *Levin v. County of Salem,* 133 N.J. 35 (1993), one of the plaintiffs suffered a paralyzing injury when he dove off a county bridge and hit a submerged sandbar. The New Jersey Supreme Court held that even though the county had known from a previous lawsuit about the dangerousness of the sandbar, the bridge was not a dangerous condition. In reaching its holding, the court specifically rejected plaintiff's argument that "the use of the property as a recreational facility, when the public body knew of

12

the use, created a dangerous condition of property."  *Id.* at 43.

Citing a series of cases, the *Levin* court considered the meaning of "dangerous condition" in the Act.  It held that "heretofore courts have understood a 'dangerous condition' as defined in N.J.S.A. 59:4-1a to refer to the 'physical condition of the property itself and not to activities on the property.'" *Id.* at 44 (*quoting Sharra v. City of Atlantic City*, 199 N.J. Super. 535, 540, 489 A.2d 1252 (App. Div. 1985)).

Turning to California cases for guidance in deciding when a "dangerous condition" exists, the court noted that most California cases draw an important distinction: "that a physical defect in the property must exist as a precondition to public-entity liability."  *Id.* at 47.  Building on this, the Supreme Court concluded that:

> In this case, there was no missing plate, no
> broken bolt, no defect in the bridge itself
> that caused or contributed to cause the
> tragic accident. The danger arose because the
> bridge was where the shallow water was.

133 N.J. at 49.  By emphasizing the physical defect and physical condition of the property, the *Levin* case necessarily informs this Court's conclusion that the "narrowness" of the boardwalk cannot be considered a dangerous condition.

The New Jersey Supreme Court has more recently summarized the *Levin* holding in *Posey v. Bordentown Sewerage Auth.*, 171 N.J. 172 (2002), that "[a] dangerous condition under the TCA relates

13

to the physical condition of the property itself and not to activities on the property." *Id.* at 188 (*citing Levin*).

This case shares similarities with other cases which have found no dangerous conditions. Consider *Mendelsohn v. City of Ocean City.* 2004 U.S. Dist. LEXIS 20467 (D.N.J. 2004). In *Mendelsohn*, plaintiffs brought suit against the City of Ocean City for compensatory damages after Mrs. Mendelsohn stumbled on a nail that protruded from the Ocean City boardwalk. The court granted the defendant's Motion for Summary Judgment on the grounds that plaintiffs could neither prove that a dangerous condition existed nor prove that Ocean City acted "palpably unreasonably". The Judge held that a "nail protruding one quarter of an inch is not within the category of defects encompassed by the liability provisions" of the New Jersey Tort Claims Act. *Id.* at 16. To support this conclusion the court assessed the dangerousness of the boardwalk "in light of the legislative purpose to restrict municipal liability." *Id.*

*Mendelsohn* relates to this case in two ways. First, it highlights a classic defect in property that would create liability if the defect rose to the level of a "dangerous condition". Second, its conclusion that the one quarter inch nail protrusion was a minor defect emphasizes that the mere existence of a defect is not enough under the statute. *Id.* at 17.

14

If the raised nails in *Mendolsohn* were not dangerous conditions then the narrowness of the boardwalk certainly is not one either. *Mendelsohn* at least involved a change in the state or condition of the boardwalk. As discussed above, the boardwalk did not change conditions or states in this case. In fact, the boardwalk existed at its designed width. Moreover, any pedestrian walking on the boardwalk could have tripped and been injured on the nail. In the instant action, however, walking on the boardwalk did not subject Plaintiff to the risk of injury by itself. Only the added risks of the "hot doggers" and Defendant Finley placed Plaintiff in jeopardy of injury.

Comparing cases where New Jersey courts have found a dangerous conditions to exist with those cases where the courts have found dangerous conditions not to exist confirms that this case falls into the latter category, just like *Mendelsohn*. *Compare Cordy v. Sherwin Williams Co.*, 975 F. Supp. 639 (D.N.J. 1997) (rail raised between 5/8 and 7/8 of an inch over the roadway was a dangerous condition when it stopped the tire of plaintiff's bicycle); *Grzanka v. Pfeifer*, 301 N.J. Super. 563, 570 (App. Div. 1997) (an inoperable traffic light was a possible dangerous condition); *Roe v. New Jersey Transit Rail Operations, Inc.*, 317 N.J. Super. 72 (App. Div. 1998) (N.J. Transit may have created a dangerous condition by bolting open a gate and thereby inviting the public to use it); and *Atalese v. Long Beach Twp.*,

15

365 N.J. Super. 1, 5 (App. Div. 2003)(a three-quarters of an inch differential in the pavement caused by the settling of a storm drain was a dangerous condition); with *Rodriguez v. N.J. Sports & Exposition Authority*, 193 N.J. Super. 39 (App. Div. 1983) (attack by persons in sports complex is not a dangerous condition); *Cogsville v. Trenton*, 159 N.J. Super. 71 (App. Div. 1978) (bites from a "dangerous" dog owned by tenant in a dwelling not a dangerous condition); *Setrin v. Glassboro State College*, 136 N.J. Super. 329 (App. Div. 1975) (attack on campus of State College not a dangerous condition). In other words, the activity conducted on the public property does not make the **condition** dangerous.

Unlike every other example this Court discovered in its research and cited by counsel, finding the property to be in a dangerous condition in this case would require more than analyzing a "defect" in the property. It would necessitate a comparison of the property as it was intended to exist to a hypothetical form in which the property could have existed if Ocean City had acted differently. Where, as in this case, the boardwalk was in its intended condition, this approach strains the plain meaning of the text. It also contrasts with the other examples where dangerous conditions have been found in case law.

In conclusion, the Court holds that even if the boardwalk were too narrow this does not constitute a dangerous condition

16

under § 59:4-2.  It was the bike riding mingled with pedestrians
and not a condition of the boardwalk itself which led to
Plaintiff's unfortunate accident and injuries.

## C. Palpably Unreasonable

Although not necessary to this decision, the Court holds
that Plaintiff cannot prove that Ocean City's actions or
omissions were "palpably unreasonable" as required by N.J. Stat.
Ann. § 59:4-2.[4]  Generally, the term "palpably unreasonable" has
been construed as implying "behavior that is patently
unacceptable under any given circumstance." *Kolitch v.
Lindedahl,* 100 N.J. 485, 493 (1985) *Id.* at 493.  In other words,
a public entity's actions or omissions may be deemed palpably
unreasonable if no prudent person would approve of the entity's
actions or omissions.  *Id.*

Nonetheless, as Plaintiff urges, palpably unreasonable does
"not necessarily mean very negligent or grossly negligent or
extraordinarily negligent conduct." *Schwartz v. Jordan*, 337 N.J.
Super. 550, 555 (App. Div. 2001) Applying *Kolitch's* "patently
unacceptable" test requires courts look to "not only what was
done, but what the Township's motivating concerns were." *Id.* at
563.  Consequently, the New Jersey Supreme Court has held that

___

[4] Generally, the "palpably unreasonable" inquiry is a fact
question for the jury.  When, as a matter of law, no reasonable
juror could find that a municipality's actions or inactions were
palpably unreasonable, then a court may decide the issue.  *Maslo
v. City of Jersey City*, 346 N.J. Super. 350-351 (App. Div. 2002).

the "the action or inaction of the public entity" relates to the
entity's exercise of "discretion in determining what action
should or should not have been taken." *Brown v. Brown*, 86 N.J.
565, 575 (1981).  *See also Muhammad v. N.J. Transit*, 176 N.J.
185, 196 (2003).  The Court therefore considers the actions
Plaintiff alleges Ocean City should have and should not have
taken.

Plaintiff argues that Dr. Lucenko's report provides
sufficient evidence for a reasonable juror to conclude that Ocean
City acted in a palpably unreasonable manner.  Dr. Lucenko lists
four omissions of Ocean City in support of his claim that Ocean
City acted palpably unreasonably: (1)failing to establish
effective policies and procedures to keep the public safe;
(2)failing to effect the supervision of the boardwalk;(3)failing
to provide signs in the area of the accident; and (4)failing to
provide funds to expand the boardwalk.  Plaintiff concludes:

> In essence, the Defendant, while aware that the narrow
> width of the boardwalk created a dangerous condition to
> the public, did nothing to protect against this
> hazardous condition....Based on the evidence
> presented...a reasonable jury could conclude that the
> city's complete failure to take any steps to address
> the hazardous condition on the boardwalk in the area
> where the accident occurred was unacceptable under any
> circumstances...

Pl's Br. in Opp. to Def. Ocean City's Mot. For S.J. at 23.

As a matter of law, the Court holds that neither Ocean
City's actions nor its omissions were palpably unreasonable.  All

18

of Plaintiff's allegations about Ocean City's failures ignore the
fact that Ocean City need not do "everything that might be done".
*Mendolsohn* at 23.  Ocean City endeavored to minimize the risk of
accident by enacting ordinances limiting the time bicycles are
allowed on the boardwalk during the summer.  These actions were
consistent with its Boardwalk Master Plan, wherein Ocean City
wanted to allow bicycles on the boardwalk.  These actions provide
the context in which Ocean City's "inaction" must be judged.

Neither Dr. Lucenko's four enumerated "failures" nor
anything else in his report are sufficient to meet the "patently
unacceptable" standard.  Each might have made the boardwalk safer
during the hours that bicycles were allowed on the boardwalk.
Nonetheless, each of the four "failures" suffer from the same
problem as Plaintiff's arguments about the dangerous condition.
In short, Ocean City need not enact policies, supervise the
boardwalk, place signs, or obtain money in order to protect
Plaintiff from the "dangerous condition" of the land.  As
discussed fully above, Plaintiff needed protection from the
combined activities and negligence of Defendant Finley and the
"hot doggers" traveling towards him on the morning of July 19th.

**IV.  CONCLUSION**

Because the Court finds that the narrowness of the boardwalk
cannot be proven to be a dangerous condition Ocean City is
entitled to summary judgment.  As binding New Jersey Supreme

19

Court precedent teaches, linguistically and practically, courts look to physical defects in property in order to find that dangerous conditions exist.  The plain meaning of § 59:4-1(a), the structure of the New Jersey Tort Claims Act, and case law all support this Court's holding that Plaintiff cannot sustain her claims based on the boardwalk being too narrow for its allowable uses.  For these reasons, and those discussed above, Defendant Ocean City's Motion for Summary Judgment is GRANTED.

Alternatively, the Court also holds that no reasonable fact finder could conclude that Ocean City's actions and inactions were "palpably unreasonable" as that requirement is defined under the New Jersey Tort Claims Act.  For this reason too, Defendant Ocean City's Motion for Summary Judgment is GRANTED.


**September 21, 2005**          **s/ Jerome B. Simandle**
Date                           JEROME B. SIMANDLE
                               U.S. District Judge

20